JUDGE SWEET

# 12 CV 8614

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X     Case No.

CHRISTOPHER HOWARD,

                          Plaintiff,                      **COMPLAINT**

             -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE     **PLAINTIFF DEMANDS**
DEPARTMENT, and CATHERINE LAMSTEIN, *Individually*,     **A TRIAL BY JURY**

                    Defendants.

------------------------------------------------------------------------X

NOV 2 8 2012

       Plaintiff, CHRISTOPHER HOWARD, by his attorneys, PHILLIPS & PHILLIPS,

ATTORNEYS AT LAW, PLLC, upon information and belief, complains as follows:

## NATURE OF THE CASE

1.    Plaintiff brings this action charging that Defendants violated the <u>Americans with Disabilities Act of 1990</u>, 42 U.S.C. § 12101, *et seq.* ("ADA") and the <u>New York City Human Rights Law, Administrative Code § 8-107, *et seq.*</u> ("NYCHRL"), seeking to recover lost wages, emotional distress, punitive damages, reasonable attorneys' fees and costs as a result of being **Discriminated Against**, and ultimately **Terminated**, **by his Employer** solely on the basis his **Disability** and/or **Perceived Disability**.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 42 U.S.C. §12101 *et. seq.* and 28 U.S.C. §§ 1331 and 1343.

3.    The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law

pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in this district, pursuant to 28 U.S.C. §1391(b), based upon Defendants'
    residency within the County of New York, State of New York, within the Southern District
    of New York.

## PROCEDURAL PREREQUISITES

5.  Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal
    Employment Opportunities Commission ("EEOC").

6.  Plaintiff received a Notice of Right to Sue from the EEOC, dated November 15, 2012, with
    respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7.  This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8.  Plaintiff CHRISTOPHER HOWARD ("HOWARD") is a resident of the State of New York
    and County of Queens.

9.  At all times material, THE CITY OF NEW YORK ("CITY"), the defendant herein, was and
    is a municipal corporation organized and existing as such under and by the virtue of the
    laws of the State of New York.

10. At all the times hereinafter mentioned, NEW YORK CITY POLICE DEPARTMENT
    ("NYPD"), the defendant herein, is a department subdivision of Defendant CITY and is a
    municipal entity duly organized and existing under and by the virtue of the laws of the State
    of New York.

11. At all times material, Defendant CITY operated, maintained, controlled and supervised

Defendant NYPD, as a police department of Defendant CITY.

12. At all times material, Plaintiff HOWARD was an employee of Defendant NYPD and Defendant CITY.

13. At all times material, Plaintiff HOWARD worked at Defendant NYPD's 70th Precinct, located at 154 Lawrence Avenue, Brooklyn, NY 11230.

14. At all times material, Defendant CATHERINE LAMSTEIN ("LAMSTEIN") was and is a resident of the State of New York.

15. At all times material, Defendant LAMSTEIN was and is an employee of Defendant NYPD and Defendant CITY, holding the position of "Psychologist" in Defendant NYPD's Psychological Services Department.

16. At all times material, Defendant LAMSTEIN was Plaintiff HOWARD's supervisor and/or held supervisory authority over Plaintiff HOWARD.

17. Defendant NYPD, Defendant CITY, and Defendant LAMSTEIN are herein collectively referred to as "Defendants."

## MATERIAL FACTS

18. On or about July 6, 2010, Plaintiff HOWARD began working for Defendants as a "Police Officer," earning a salary of approximately $42,000 per year.

19. In or about January 2011, Plaintiff HOWARD began working at Defendant NYPD's 70th Precinct, located at 154 Lawrence Avenue, Brooklyn, New York 11230.

20. Throughout Plaintiff HOWARD's employment, he was an exemplary employee, was never disciplined, and always received compliments for his work performance.

21. In fact, Plaintiff HOWARD had graduated from Defendants' Police Academy with Honors

and even received the Gold Rope Award, which is awarded to the top 10% of the graduating class.

22. Furthermore, as a result of his excellent work performance, in or about early 2011, Plaintiff HOWARD received a pay raise to approximately $50,000 per year.

23. On or about February 19, 2011, after suffering from stomach cramps, diarrhea, and nausea for approximately one (1) month, Plaintiff HOWARD went to see his primary care doctor, Lisa R. Hernandez, M.D., and was examined by a Physician's Assistant, Christina D'Angeles. Dr. D'Angeles made a preliminary diagnosis of **Irritable Bowel Syndrome ("IBS")** and prescribed Librax, a drug used to treat peptic ulcers, IBS, and gastritis.

24. **IBS is an impairment of the digestive system and substantially limits and impairs the "major life activity" of the "elimination of waste."** While the exact cause of IBS is unknown, the most common theory is that IBS is a disorder of the interaction between the brain and the gastrointestinal tract.

25. On or about February 24, 2011, Dr. Hernandez prescribed Zoloft, an antidepressant, for Plaintiff HOWARD, and on or about March 5, 2011, Plaintiff HOWARD returned to Dr. Hernandez's office and was prescribed Xanax, and anti-anxiety medication.

26. **Although Plaintiff HOWARD was not suffering from psychiatric illnesses, Plaintiff HOWARD was prescribed an antidepressant and an anti-anxiety medication to minimize the side-effects of the Librax.** In addition, these medications can actually treat IBS, as they affect serotonin levels in the body and drugs affecting serotonin in the intestines can help reduce IBS symptoms, as serotonin stimulates the gut motility.

27. **On or about March 5, 2011, Plaintiff HOWARD notified Defendants of all the medications he was taking, and was instructed to report to Defendant LAMSTEIN at**

4

**Defendant NYPD's Psychological Services Department**.

28. Following Defendants' instructions, Plaintiff HOWARD immediately reported to Defendant LAMSTEIN, who stripped Plaintiff HOWARD of his gun and shield and instructed him to remain home for one (1) additional week.

29. Defendant LAMSTEIN obviously did not like the fact that Plaintiff HOWARD was disabled, and thus began a discriminatory campaign against him, all in an effort to set Plaintiff HOWARD up for failure, and therefore justify his termination.

30. In or about March 2011, Plaintiff HOWARD was seen by a Gastroenterologist, Dr. Daniel Megna, who prescribed Bentyl, a drug that relieves muscle spasms and cramping in the gastrointestinal tract by blocking the activity of acetylcholine on cholinergic receptors on the surface of muscle cells. Dr. Megna also rendered a diagnosis of IBS.

31. On or about March 8, 2011, Plaintiff HOWARD was seen by Dr. Anna A. Kharitonova, a Psychiatrist, who took him off of Librax and Zoloft and instead prescribed Lexapro and Klonipin.

32. On or about March 12, 2011, Plaintiff HOWARD returned to Defendant LAMSTEIN at Defendant NYPD's Psychological Services Department and notified her that he was currently taking Klonopin, Lexapro and Bentyl. **However, Defendant LAMSTEIN advised Plaintiff HOWARD that he could not return to full duty until he was no longer taking Klonipin**.

33. As such, on or about March 29, 2011, Plaintiff HOWARD stopped taking Klonipin and on or about March 31, 2011, Plaintiff HOWARD advised Defendant LAMSTEIN of such, and requested that he be allowed to return to full duty. **However, Defendant LAMSTEIN still refused to return him to full duty because Plaintiff HOWARD was still taking Lexapro**

**and Bentyl**, but advised him that she would allow Plaintiff HOWARD to work on restricted duty.

34. In or about late-April 2011, Plaintiff HOWARD again told Defendant LAMSTEIN that he was fully cleared by his doctor, psychiatrist, and therapist, and pleaded with Defendant LAMSTEIN to allow him to return to work full duty. **However, Defendant LAMSTEIN nonetheless told Plaintiff HOWARD that she could not return him to full duty until he completely stopped taking all medications**.

35. As a result, Plaintiff HOWARD immediately stopped taking Bentyl, and on the recommendation of his psychiatrist, to be safe, Plaintiff HOWARD slowly weaned himself off the Lexapro, and **by on or about August 29, 2011, Plaintiff HOWARD had stopped taking all of his medications and was feeling better**.

36. **On or about August 29, 2011, Plaintiff HOWARD notified Defendant LAMSTEIN that he was completely off all medications, was feeling better, and could thus finally return to full duty.**

37. However, on or about September 20, 2011, when Plaintiff HOWARD met with Defendant LAMSTEIN, she advised him that **Defendants were going to terminate his employment because Defendants feared that a return of his symptoms could result in a disability retirement sometime in the future**.

38. Plaintiff HOWARD was shocked that Defendants' incorrect and false assumptions were causing him to lose his job. As such, **Plaintiff HOWARD immediately objected to this and explained that he was healthy and fit to return to full duty**.

39. On or about October 2, 2011, Sergeant Joseph Redmond of Defendant NYPD's 70th Precinct wrote to Defendant NYPD's Commanding Officer, Employee Management

6

Division, in which he stated,

> *"1.     As a supervisor in the 70 precinct I have had the pleasure of working directly with Police Officer Howard since June 2011.  During this time he has proven himself to be a hardworking, intelligent member of the command.  I would like to take this opportunity to recommend retaining him as a Police Officer.*
>
> *2.     Police Officer Howard has been an asset to the 70 precinct due to his positive attitude and excellent work ethic.  He has been valuable to the command in all of the assignments he has been given.  He is productive and shows proficiency no matter what take he is assigned.  Police Officer Howard takes pride in his appearance and has shown great dedication to being a Police Officer.  His disciplinary and attendance records are exemplary.*
>
> *3.     I highly recommend retaining Police Officer Howard without reservation.  His drive and abilities are to be admired and of given the opportunity I am confident he will continue to be an asset to the Department."*

40. Also on or about October 2, 2011, Plaintiff HOWARD gave Defendant LAMSTEIN over twelve (12) letters of recommendation from a plethora of Plaintiff HOWARD's supervisory officers, all Sergeants and Lieutenants.

41. Furthermore, on or about December 14, 2011, Plaintiff HOWARD received an excellent performance evaluation from Sergeant Jahmel Felipe and Lieutenant Timothy Anderson in which they stated that, "**Police Officer Howard has the drive and ability to be an asset to the department when he is at full duty to conduct all police related functions**."

42. However, also on or about December 14, 2011, when Plaintiff HOWARD met with Defendant LAMSTEIN, she confirmed that she had indeed nonetheless requested that Plaintiff HOWARD's employment be terminated due to his perceived disability.

43. **As expected, on or about January 23, 2012, Plaintiff HOWARD's commanding officer, Deputy Inspector Eric Rodriguez, summoned Plaintiff HOWARD into his office and suddenly terminated Plaintiff HOWARD's employment because "Defendants feared**

**that a return of his symptoms could result in a disability retirement sometime in the future."**

44. It's clear that Defendants terminated Plaintiff HOWARD's employment solely on the basis of his disability and/or perceived disability.

45. **Defendants clearly perceived Plaintiff HOWARD as being disabled and falsely believed that this disability would interfere with his ability to perform his job duties in the future.**

46. It's quite apparent that Plaintiff HOWARD's work performance had nothing to do with his discriminatory termination, as only one (1) month earlier, **on or about December 14, 2011, Plaintiff HOWARD received an extremely positive performance evaluation** from his supervisor where Plaintiff HOWARD received very high ratings and glowing comments.

47. Plaintiff HOWARD felt offended, disturbed, and humiliated by this illegal termination.

48. But for the fact that Plaintiff HOWARD was disabled and/or that Defendants perceived him to be disabled, Defendants would not have terminated his employment.

49. **Defendants made no attempt to engage in any interactive process to explore what reasonable accommodation might have allowed Plaintiff HOWARD to continue his employment with Defendants.**

50. Furthermore, **at the time of his unlawful termination, Plaintiff HOWARD was fully ready and able to perform the essential functions and duties of his job**.

51. Plaintiff HOWARD's performance was, upon information and belief, above average during the course of his employment with Defendants. Plaintiff HOWARD never received any negative comments regarding his behavior or work performance.

52. Plaintiff HOWARD has been unlawfully discriminated against, humiliated, retaliated

against, has been degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

53. **Defendants' actions and conduct were intentional and intended to harm Plaintiff HOWARD**.

54. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

55. As a result of the Defendants' discriminatory treatment of Plaintiff, he has suffered severe emotional distress and physical ailments.

56. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

57. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

58. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendant)

59. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were

more fully set forth herein at length.

60. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

61. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

62. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability and/or perceived disability.

63. As such, Plaintiff has been damaged as set forth herein.

**<u>AS A SECOND CAUSE OF ACTION FOR RETALIATION</u>**
**<u>UNDER THE AMERICANS WITH DISABILITIES ACT</u>**
**<u>(Not Against Individual Defendant)</u>**

64. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

65. The ADA prohibits retaliation, interference, coercion, or intimidation.

66. 42 U.S.C. § 12203 provides:

        (a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

        (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

67. Defendants violated this section as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

68. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

69. The Administrative Code of City of NY § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

70. Defendants violated the section cited herein as set forth.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

71. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under this chapter, or attempt to do so."

73. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

74. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

75. New York City Administrative Code Title 8-107(13) **Employer liability** for discriminatory conduct by employee, agent or independent contractor.

> a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

> b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

> > i.   the employee or agent exercised managerial or supervisory responsibility; or

> > ii.  the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

> > iii. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.   An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an **independent contractor**, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

76. Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

77. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

79. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## JURY DEMAND

80. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

13

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA") and the New York City Human Rights Law, Administrative Code § 8-107 et seq. (the "NYCHRL"), by discriminating against Plaintiff on the basis of his disability and/or perceived disability;

B. Awarding damages to the Plaintiff, retroactive to the date of his discharge for all lost wages and benefits resulting from Defendants' unlawful termination of his employment and to otherwise make him whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.


Dated: New York, New York
      November 27, 2012

 

                        **PHILLIPS & PHILLIPS,**
                        **ATTORNEYS AT LAW, PLLC**

                        Alex Umansky, Esq. (AU7961)
                        *Attorneys for Plaintiff*
                        30 Broad Street, 35th Floor
                        New York, NY 10004
                        (212) 248-7431